779 P.2d 395

**Gary E. SPRAGUE,**
**Claimant–Appellant,**

v.

**CALDWELL TRANSPORTATION**
**INC., Employer,**

and

**Aetna Casualty & Surety, Surety,**
**Defendants–Respondents.**

No. 17081.

Supreme Court of Idaho.

May 12, 1989.

On Denial of Rehearing
Sept. 7, 1989.

Gigray, Miller, Downen, Weston & Pasley, Caldwell, for appellant. William F. Gigray III, argued.

Imhoff & Lynch, Boise, for respondents. Thomas P. Baskin III, argued.

BISTLINE, Justice.

The Commission concluded that claimant's medical treatment occurring subsequent to April 10, 1985, was not "reasonable," and therefore the surety was not obligated to pay such costs under I.C. § 72–432(1). *We reverse.*

### A.

Claimant Gary Sprague suffered a back injury on June 5, 1984, which arose out of and in the course of his employment with Caldwell Transportation Company. While fueling a vehicle, Sprague fell backward from the third step of a gasoline tank when his feet got tangled in a gasoline hose. He fell about three feet, landing on his back and head. Sprague immediately consulted with Dr. John Downey, a chiropractic physician from Caldwell.

Dr. Downey diagnosed Sprague's injury as a compression fracture of the 12th thoracic vertebrae and a subluxation complex of the lumbar spine. Dr. Downey treated Sprague on a frequent basis, submitting periodic reports and billings to the surety, Aetna Casualty. In September 1984, the surety arranged for a consultation with Dr. Floyd Johnson, an orthopedic surgeon. The surety subsequently notified Dr. Downey and claimant Sprague that further chiropractic treatment would not be authorized because Dr. Johnson indicated that Sprague should not receive manipulative treatment, but only passive treatment (*e.g.,* ultrasound and traction). However, Dr. Johnson later reported that chiropractic treatment would be appropriate. Sprague

continued to receive treatment from Dr. Downey.

The surety subsequently arranged consultation with another orthopedic surgeon, Dr. Keith Taylor, in April of 1985. Dr. Taylor concluded Sprague had received enough chiropractic therapy and that Sprague should engage in back exercises. Thereafter, the surety requested that Dr. Downey send his final report and bill. On April 15, 1985, Dr. Downey sent a report stating the "patient has been finalized and has reached his MMI" (maximum medical improvement). The surety paid all of Dr. Downey's charges through April 10, 1985, in the total amount of $5108.71.

Sprague nevertheless returned to Dr. Downey a week later for further treatment of back pain. This appeal focuses on the treatment received after April 10, 1985. Sprague received 34 additional treatments in 1985 and 13 in 1986. The bill for this treatment totalled $1,848.96. The referee found that during the period of treatment after April 10, 1985, Sprague "made gradual improvement." The referee further found that the post April 10, 1985, "charges were fair, reasonable and similar to others in the same profession." Surprisingly, however, the referee also concluded that the treatment was not reasonable under I.C. § 72–432(1), and therefore the surety was not obligated to make payment therefor. The Commission adopted the Findings of Fact, Conclusions of Law, and Order of the referee in their totality.

### B.

Our scope of review in appeals of this kind is well established. The Idaho Constitution mandates that review of the Indus-trial Commission is limited to questions of law. Idaho Const. art V, § 9. The findings of the Commission will not be disturbed on appeal when supported by substantial and competent evidence. *Nenoff v. Culligan Soft Water,* 97 Idaho 243, 542 P.2d 837 (1975).

The provisions of the Worker's Compensation Law are to be liberally construed *in favor* of the employee. *Jones v. Morrison–Knudsen Co.,* 98 Idaho 458, 567 P.2d 3 (1977); *Burch v. Potlatch Forests, Inc.,* 82 Idaho 323, 353 P.2d 1076 (1960). Liberal construction in favor of the worker is required to enable the act to serve the humane purposes for which it was promulgated, "leaving no room for narrow, technical construction." *Hattenburg v. Blanks,* 98 Idaho 485, 485, 567 P.2d 829, 829 (1977).

### C.

The sole issue presented on this appeal is whether the treatment Sprague received from his physician subsequent to April 10, 1985, was "reasonable" under I.C. § 72–432(1). In pertinent part, that code provision states:

> "The employer *shall* provide ... *reasonable* medical ... treatment ... as may be required by the *employee's* physician...."

(Emphasis added.) [1] The clearly expressed intent of the legislature must be given effect; there is no occasion for construction where language is unambiguous. *Ottesen v. Bd. of Comm'rs of Madison Co.,* 107 Idaho 1099, 695 P.2d 1238 (1985). Thus, the mandate of the statute requires the employer to pay for the costs of reasonable medical treatment required by the employee's physician. Chiropractic physicians are

---

1. Idaho Code § 72–432(1) provides in full:

 The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required by the employee's physician *or* needed immediately after an injury or disability from an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

 (Emphasis added.) Note that the disjunctive "or" categorizes treatment into two kinds: (1) that required by an employee's physician, and (b) that needed immediately after an injury or disability from an occupational disease, and for a reasonable time thereafter. The term "or" should ordinarily be given its normal disjunctive meaning unless such a construction renders the provision in question repugnant to other provisions in the statute, would involve an absurdity or produce an unreasonable result. *Filer Mutual Telephone Co. v. Idaho State Tax Comm'n,* 76 Idaho 256, 281 P.2d 478 (1955).

recognized and acceptable professionals able to provide treatments for industrial accidents. *See* I.C. § 72–102(20) (" 'Physician' means medical physicians and surgeons, ... chiropractic physicians."). Furthermore, chiropractic is a licensed profession the practice of which without a license is illegal. *See* I.C. § 54–702. Our review requires an examination of the record.

First, as noted, the Commission found that "during the period of treatment by Dr. Downey subsequent to April 10, 1985, Sprague made gradual *improvement.*"[2] (Emphasis added.) Second, the uncontradicted evidence establishes that Dr. Downey was of the unequivocal opinion that in his judgment the medical treatment Sprague received was required.[3] Third, the Commission found that the treatment Sprague received "was within the standard of the practice of chiropractic. The charges were *fair, reasonable* and similar to charges of others in the same profession."[4] These facts are beyond cavil or dispute.

The Commission determined, however, in the conclusions of law that the chiropractic treatment was "unreasonable" under I.C. § 72–432(1) and therefore the surety was not obligated to make payment therefor. While we do not disturb findings of fact supported by the evidence, whether the conclusions of law are supported by the facts presents a question of law over which we exercise free review. As stated in *O'Loughlin v. Circle A Construction,* 112 Idaho 1048, 739 P.2d 347 (1987):

> But here the pertinent facts are uncontroverted. Instead, the issues turn upon the proper application of the law to the undisputed [or found] facts.... *Hix v. Potlatch Forests, Inc.,* 88 Idaho 155, 159, 397 P.2d 237, 241 (1964), citing *Johnston*

*v. A.C. White Lumber Co.,* 37 Idaho 617, 217 P. 979 (1923); *Ybaibarriaga v. Farmer,* 39 Idaho 361, 228 P. 227 (1924). The standard is one of free review. The Honorable Donald L. Burnett, Jr., of our Court of Appeals, has written: 'An appellate court is expected to declare the law and may substitute its view for that of a trial court or agency upon a legal issue.' Standards of Appellate Review in State and Federal Courts, § 3.2, p. 3–3, *Idaho Appellate Handbook* (Idaho Law Foundation, Inc., 1985).

112 Idaho at 1051, 739 P.2d at 350.

 The Commission's finding that Sprague's accident and injury "did not necessitate the type of care provided to [Sprague] by Dr. Downey subsequent to April 10, 1985" incorrectly focuses on the necessity of the treatment, rather than on whether it was reasonable and was required by Sprague's physician. I.C. § 72–432(1) obligates the employer to provide treatment, if the employee's physician requires the treatment and if the treatment is reasonable. It is for the physician, not the Commission, to decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision is whether the treatment was reasonable. Here, the Commission's attempt to premise a conclusion that the treatment was not reasonable on a finding that it was not necessary exceeded the Commission's authority.

 Under the circumstances of this case, there is no dispute that: a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice the

---

**2.** This finding is supported by substantial competent evidence and will not be disturbed on appeal.

**3.** Dr. Downey's testimony in part provides: "Q. Now concerning the care and treatment that was provided to Mr. Sprague in 1985 and in 1986, in your opinion was this care and treatment required for the injury that he suffered in June of 1984? A. Yes." Tr., at 65. This uncontradicted testimony must be accepted as true. *Smith v. Idaho State University Federal Credit*

*Union,* 114 Idaho 680, 685, 760 P.2d 19, 24 (1988); *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 477, 74 P.2d 171, 175 (1937). *See also Dinneen v. Finch,* 100 Idaho 620, 627, 603 P.2d 575, 582 (1979).

**4.** Finding of Fact VII, R., at 10–11 (emphasis added). This finding is supported by substantial competent evidence and will not be disturbed on appeal.

charges for which were fair, reasonable and similar to charges in the same profession. We hold that in light of these facts a legal conclusion that the treatment was unreasonable under I.C. § 72–432(1) cannot stand. Accordingly, we reverse and remand to the Commission to enter an order consistent with this opinion.

*Reversed.* Costs to claimant; no attorney fees on appeal.

SHEPARD, C.J., and HUNTLEY and JOHNSON, JJ. concur.

BAKES, Justice, dissenting:

### A.

The majority opinion reverses the Industrial Commission, exercising so-called "free review" of what is supposedly the Commission's conclusion of law that the chiropractic treatment provided by Dr. Downey after April 10, 1985, was "unreasonable." Being a conclusion of law, according to the majority opinion, we are not bound by the constitutional prohibition in Art. 5, § 9, of the Idaho Constitution which prohibits this Court from reviewing the factual determinations of the Industrial Commission.[5] However, the majority opinion does not acknowledge, much less discuss, the Commis-

sion's Finding of Fact IX in which the Commission found as a fact "that the claimant's accident and injury did not necessitate the type of care provided to the claimant by Dr. Downey subsequent to April 10, 1985, and that therefore such care and treatment was not reasonable, not necessary, and not within the obligation of the employer and surety to provide for the claimant." Commission Finding of Fact IX. That finding in Finding of Fact IX was made only after acknowledging that "there was a conflict in the evidence as to whether or not the chiropractic care received by the claimant subsequent to April 10, 1985, was reasonable care which the claimant needed as a result of the accident of June 5, 1984." Thus, this Court is not reviewing a conclusion of law of the Industrial Commission as the majority opinion holds; rather, we are reviewing Finding of Fact IX which held that the claimant's June 5, 1984, accident did not necessitate Dr. Downey's chiropractic treatments subsequent to April 10, 1985, and that that treatment was not reasonable or necessary. Accordingly, we are not entitled to exercise "free review" of the finding of "unreasonableness" made by the Industrial Commission.[6]

By this appeal we are reviewing a factual finding by the Industrial Commission that

---

5. **§ 9. Original and appellate jurisdiction of Supreme Court.**—The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof, and any order of the public utilities commission, and any order of the industrial accident board: the legislature may provide conditions of appeal, scope of appeal, and procedure on appeal from orders of the public utilities commission and of the industrial accident board. *On appeal from orders of the industrial accident board the court shall be limited to a review of questions of law.* The Supreme Court shall also have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction. (Emphasis added.)

6. Even if the Commission had not found the facts which it did in Finding of Fact IX, and had merely stated those facts in Conclusion of Law II (an impression one would get from reading the majority opinion), nevertheless they still would be findings of fact to which this Court must give deference under the Constitution, even though they were contained in a conclusion of law. If the majority is correct, and the

rule is that if a finding of fact is located and placed in the conclusions of law that this Court can then exercise free review over that finding of fact, one wonders if the converse would also be true. If the Commission made a legal analysis and placed it in its findings of fact, would that preclude this Court from exercising review of the law applied by the Commission merely because it placed it in the findings of fact. I would think not. Therefore, even if the Commission had not rendered its Finding of Fact IX, and had placed its finding that "the claimant's accident and injury did not necessitate the type of care provided to the claimant by Dr. Downey subsequent to April 10, 1985, and that therefore such care and treatment was not reasonable, [or] necessary" in its conclusion of law, it would still be a finding of fact which this Court could only review if there was no substantial evidence to support it. Art. 5, § 9, Idaho Constitution; *Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 629 P.2d 696 (1981); *Lopez v. Amalgamated Sugar Co.,* 107 Idaho 590, 691 P.2d 1205 (1984); *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1983).

the chiropractic treatment subsequent to April 10, 1985, was not necessitated by the claimant's industrial accident on June 5, 1984, and was not reasonable or necessary. The testimony of two orthopedic surgeons, Dr. Johnson and Dr. Taylor, amply support that factual finding by the Commission, as will be demonstrated later herein. To argue as the majority opinion does that when the Commission referred to those facts, which it found in Finding of Fact IX, in Conclusion of Law II, that this Court could then "exercise free review" over those facts found in Finding of Fact IX, clearly is a violation of Art. 5, § 9, of the Idaho Constitution which prohibits this Court from reviewing the factual findings of the Commission. *Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 629 P.2d 696 (1981); *Lopez v. Amalgamated Sugar Co.,* 107 Idaho 590, 691 P.2d 1205 (1984); *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1983).

However, the Commission did enter Finding of Fact IX, and therein it found that "the claimant's accident and injury did not necessitate the type of care provided to the claimant by Dr. Downey subsequent to April 10, 1985, and that therefore such care and treatment was not reasonable, not necessary and not within the obligation of the employer and surety to provide to the claimant." The majority errs egregiously when it concludes that it can exercise "free review" of those findings of fact, merely because the Commission also referred to them in Conclusion of Law II. The Court's action is a clear violation of Art. 5, § 9.

B.

The majority opinion further errs when it states, in footnote 3, *ante* at 722, 779 P.2d at 397, that Dr. Downey's opinion, to the effect that his care and treatment of Mr. Sprague during 1985 and 1986 was required by the injury, was "uncontradicted testimony" which must be accepted as true. That statement totally ignores the testimony and medical records of the orthopedic surgeons, Dr. Floyd Johnson and Dr. Keith Taylor. As the Commission correctly noted in its Finding of Fact IX, "there is a con-

flict in the evidence as to whether the chiropractic care received by the claimant subsequent to April 10, 1985, was reasonable care which the claimant needed as a result of the accident of June 5, 1984." A complete review of the record clearly demonstrates the error in the majority's claim that Dr. Downey's testimony was "uncontradicted." In fact, Dr. Downey's testimony and his medical records were self-contradictory, so even without considering the testimony and evidence of Doctors Taylor and Johnson, the Commission was entitled to disregard the chiropractor's testimony. *Smith v. Idaho State University Fed. Credit Union,* 114 Idaho 680, 685, 760 P.2d 19, 24 (1988) (the Court need *only* accept the uncontradicted and unimpeached testimony of a witness. Dr. Downey's testimony was self-contradictory, as well as contradicted by the testimony and records of Drs. Taylor and Johnson).

The following is a summary of the evidence in the record, as found by the Industrial Commission, which clearly supports the Commission's (1) finding that there was "a conflict in the evidence as to whether the chiropractic care received by the claimant subsequent to April 10, 1985, was reasonable ...," and (2) that "claimant's accident and injury did not necessitate the type of care provided to the claimant by Dr. Downey subsequent to April 10, 1985, and therefore such care and treatment was not reasonable [or] necessary."

Claimant's back problems did not commence with the June 5, 1984, accident in question. In 1975 he had had an accident while employed with a different employer in which he seriously injured his back and right hip, and had seen numerous doctors during that time for his back problem. He began treatments with Dr. Downey, the chiropractor in question here, in 1982, two years before the June 5, 1984, accident involved in this case. He had numerous visits to Dr. Downey in 1982 and 1983 for his back and hip problems. Therefore, the June 5, 1984, accident in which claimant fell while stepping back from the fuel truck was not the beginning of claimant's back problems, but only a continuation of them. The claimant's testimony and the records

of Dr. Downey disclose that during 1984 claimant made 100 trips to the chiropractor for his problems, 43 visits in 1985, and 14 in 1986, not all of which were related to the accident of June 5, 1984.

After claimant's accident on June 5, 1984, he immediately went to Dr. Downey who X-rayed claimant and diagnosed his injury as a compression fracture of the twelfth thoracic vertebra, and immediately commenced chiropractic treatment of the injury. He subsequently diagnosed a subluxation complex of the lumbar spine as well. The orthopedic surgeon Dr. Taylor would later disagree with that diagnosis. After the accident claimant had chiropractic treatment on almost a daily basis, although claimant was able to return to work after approximately two weeks. Dr. Downey's bills were submitted to and paid by the surety for the employer.

In September, 1984, three months after the accident, claimant was examined by Dr. Floyd Johnson, a Boise orthopedic surgeon, at the surety's request. Dr. Johnson reported on September 14, 1984, that claimant's symptoms had cleared quite well and he had very little back pain. Dr. Johnson advised claimant to continue wearing a brace, avoid heavy work but not to engage in aggressive chiropractic manipulation for at least six months after the injury. Dr. Keith Taylor, M.D., a Boise orthopedic surgeon, would later testify that chiropractic manipulation is not an indicated treatment immediately after a compression fracture of a vertebra.

On April 3, 1985, the surety arranged for Sprague to be examined by Dr. Keith Taylor, M.D. Dr. Taylor testified, and the Commission found, that at the time of that examination the claimant was "comfortable, doing well, able to move easily, and had no significant pain or tenderness." The X-rays disclosed a healed compression fracture at the twelfth dorsal vertebra and that the claimant had a good range of motion in his back. A neurological evaluation was normal and Dr. Taylor found "no significant displacement or subluxation." Dr. Taylor "recommended that the claimant continue an active exercise program with active back exercises. He believed that the claimant had received more than an adequate amount of chiropractic therapy." Dr. Taylor testified that the claimant had a need to strengthen and relax his back muscles, and he testified that as a treating physician he would have prescribed physical therapy and an active exercise program as opposed to passive chiropractic modalities.

Upon receipt of Dr. Taylor's report the surety advised the claimant and Dr. Downey of the results of Dr. Taylor's examination. The surety requested that Dr. Downey send his final report and bill. The Commission found that "on April 15, 1985, Dr. Downey complied by sending a report to the surety stating, 'Patient has been finalized and has reached his MMI' (maximum medical improvement)." Commission Finding V. The surety subsequently paid all of Dr. Downey's charges up to that time. The Commission further found that "claimant understood upon receipt of the communication from the surety that the surety was taking the position that it would no longer be responsible for expenses incurred by further treatment by Dr. Downey." Nevertheless, the Commission found that claimant made 34 additional visits to Dr. Downey in 1985 and 13 visits in 1986 for the total bill incurred by claimant subsequent to April 10, 1985, of $1,848.96, which is the claim which was sought in this proceeding before the Industrial Commission. Dr. Downey continued to send periodic reports to the surety, but the Commission found that "the reports are uninformative." The Commission further found that "neither Dr. Downey nor the claimant requested that the surety authorize additional treatment by Dr. Downey, nor did Dr. Downey explain to the surety how the continued treatment related to the condition caused by the claimant's [industrial] injury after the doctor had reported that the claimant had reached maximum medical improvement by April 15, 1985." Furthermore, Dr. Downey's reports reflect that at times Sprague was complaining of back pain at a level below the level of the June 5, 1984, injury, and at times was complaining of hip pain, and pain which

resulted from spending long hours in driving a bus. Dr. Downey in his testimony acknowledged that some of the treatment subsequent to April 10, 1985, was for claimant's complaints regarding hip pain, which the Commission could have found were related to flare-ups from his 1982 hip injury which was prior to his employment with the Caldwell Transportation Company.

Claimant Sprague was again examined by Dr. Taylor on January 27, 1987, at the request of the surety. Dr. Taylor testified, and the Commission found, that at that time claimant had no complaints of discomfort or back difficulty, that claimant had no need for further treatment or chiropractic care. Dr. Taylor specifically testified that subsequent to April of 1985 he would have preferred a program of active exercise to strengthen muscles, and would not have used the type of passive therapy utilized by Dr. Downey.

Based upon that evidentiary record, the Commission in its Finding of Fact IX found that "the claimant's accident and injury did not necessitate the type of care provided to the claimant by Dr. Downey subsequent to April 10, 1985, and that therefore such care and treatment was not reasonable, not necessary, and not within the obligation of the employer and surety to provide for the claimant." That finding of fact is amply supported by the evidence cited above. Therefore, under Art. 5, § 9, of the Idaho Constitution we are not at liberty to exercise a "free review" of those findings as the majority opinion does. Art. 5, § 9, Idaho Const.; *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984); *Nelson v. Pumnea*, 106 Idaho 48, 675 P.2d 27 (1983).

### C.

The Commission, in Conclusion of Law I, set out the statute I.C. § 72-432(1). Then, in Conclusion of Law II, the Commission applied that statute to its Finding of Fact IX and concluded that the chiropractic treatments after April 10, 1985, were "not within the obligation of the employer and surety...." The mere reference to Finding of Fact IX in Conclusion of Law II does not turn Finding of Fact IX into a conclusion of law over which this Court can exercise "free review." Nor does the conclusion in the majority opinion that "the claimant made gradual improvement *from* the treatment received" support the Court's final conclusion that "we hold that in light of these facts a legal conclusion that the treatment was unreasonable under I.C. § 72-432(1) cannot stand." The Commission did *not* find that "the claimant made gradual improvement *from* the treatment received," as the majority opinion states. What the Commission found in Finding of Fact VII was that "during the period of treatment by Dr. Downey subsequent to April 10, 1985, the claimant made gradual improvement." The Commission did not find that the improvement was "from" the treatment as the majority opinion states, but merely that it was "during the period of treatment." That is significant because during that same period of time the Commission found that the claimant "continued on his own exercise program" which had been prescribed to him by Dr. Taylor. While the Commission acknowledged that "the claimant testified that he received relief from discomfort at each visit," and that the relief would wear off after a period of time, the Commission never found as a fact that claimant received any relief from that treatment. Rather, the Commission found in Finding of Fact IX that the "accident and injury did not necessitate [that] type of care," and that his industrial accident and injury to his twelfth thoracic vertebra was only benefiting from the exercise program, and not the chiropractic manipulation. That, together with Dr. Downey's testimony and records which indicate that some of the chiropractic treatment rendered to claimant after April 10, 1985, was actually for complaints of pain in other parts of his back and hips, unrelated to the industrial accident of June 5, 1984, supports the Commission's Finding of Fact IX that "the claimant's accident and injury did not necessitate the type of care provided the claimant by Dr. Downey subsequent to April 10, 1985, and that therefore such care

and treatment was not reasonable [or] necessary...."

On appeal from decisions of the Industrial Commission, or for that matter decisions of the trial courts of this state, the evidentiary record must be viewed most favorably to the party who prevailed before the trier of fact, and all reasonable inferences must be resolved in favor of the prevailing party below. *Parker v. Engle,* 115 Idaho 860, 771 P.2d 524 (1989); *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986); *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979). Viewed in that perspective, the record in this case amply supports the Industrial Commission's decision in this case. It is only by overlooking Finding of Fact IX, and by quoting from only a selective and minuscule portion of the testimony (footnote 3, *ante* at 722, 779 P.2d at 397) that the majority opinion can conclude, as it does, that the record is "uncontradicted" that Dr. Downey's care and treatment subsequent to April 10, 1985, was required by the injury that he suffered in June of 1984.

Accordingly, I dissent.

## OPINION ON DENIAL OF PETITION FOR REHEARING.

BISTLINE, Justice.

The Court has received and considered Caldwell Transportation's petition for rehearing. The petition is denied. We continue to adhere to the conclusion which was reached and the basis thereof. However, we have determined to clarify by adding an additional paragraph for insertion just prior to the last full paragraph of our opinion of May 12, 1989, which additional paragraph is as follows:

The Commission's finding that Sprague's accident and injury "did not necessitate the type of care provided to [Sprague] by Dr. Downey subsequent to April 10, 1985" incorrectly focuses on the necessity of the treatment, rather than on whether it was reasonable and was required by Sprague's physician. I.C. § 72–432(1) obligates the employer to provide treatment, if the employee's phy-

sician requires the treatment and if the treatment is reasonable. It is for the physician, not the Commission, to decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision is whether the treatment was reasonable. Here, the Commission's attempt to premise a conclusion that the treatment was not reasonable on a finding that it was not necessary exceeded the Commission's authority.*

BAKES, C.J., and JOHNSON, J., concur.

HUNTLEY, J., fully concurred prior to his resignation on August 7, 1989.

SHEPARD, J., sat, but did not participate due to his untimely death.

---

* Editor's note: The additional paragraph has been inserted in the original opinion.