**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 38809**

| | | |
|---|---|---|
| MARIA GOMEZ, | ) | |
| | ) | Boise, January 2012 Term |
| Claimant-Appellant, | ) | |
| | ) | 2012 Opinion No. 44 |
| v. | ) | |
| | ) | Filed: March 5, 2012 |
| DURA MARK, INC., Employer, and | ) | |
| STATE INSURANCE FUND, Surety, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission.

Industrial Commission Order Denying Reconsideration, <u>affirmed.</u>

McBride & Roberts, Idaho Falls, for appellant. Michael R. McBride argued.

Augustine Law Offices, PLLC., Boise, for respondents. Paul J. Augustine argued.

---

BURDICK, Chief Justice

This case concerns an appeal of an Order Denying Reconsideration by the Industrial Commission of Appellant Maria Gomez's motion to reopen the record to allow for additional evidence on the issue of causation. The Industrial Commission previously ordered that Gomez had failed to prove the medical treatment she received for a back injury was related to an industrial accident and injury. At the emergency hearing pursuant to the Judicial Rules of Practice and Procedure adopted by the Commission, Gomez introduced evidence regarding her entitlement to reasonable and necessary medical care pursuant to I.C. § 72-432, but the referee denied Gomez's claim on the grounds of causation. We affirm the Commission's judgment. In doing so, this Court wishes to provide a clear message that without a specific stipulation that causation will be a contested issue at the hearing pursuant to I.C. § 72-713, and especially if there is a difference of opinion as to causation by opposing parties and their experts, claimant's attorneys should no longer be lulled by anything other than a stipulation to all legal prerequisites and elements for recovery and be prepared to present evidence of a causal connection between the industrial injury or sickness and the required treatment.

1

# I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2010, Appellant Maria Gomez (Gomez) filed a Worker's Compensation Complaint with the Industrial Commission (Commission) claiming benefits for an accident that occurred on July 24, 2009, when she injured her lower back lifting sixty-pound boxes. The injury occurred at Blackfoot Brass (Dura Mark). Gomez had previously suffered two work-related accidents while working with Dura Mark, one in 2002, the other in 2006, but had returned to work without restrictions after participating in physical therapy for both injuries.

In November 2009, Dr. W. Scott Huneycutt diagnosed Gomez with a "herniated lumber [sic] disk with radiculopathy and low back pain." As for causation, Dr. Huneycutt indicated that he would defer to a physical medicine specialist for any determination of causality or disability. Dr. Huneycutt referred Gomez to a physiatrist and pain management specialist, Dr. Jake Poulter. Dr. Poulter reviewed Gomez's MRI in December 2009, and concluded that she had a "disc protrusion at the L4-L5 level with a bilateral lateral recess narrowing" and a "small disc bulge at the L5-S1 level," together with "impingement of the exiting nerve root on the L4-L5 level" caused by the disc bulge. On February 16, 2010, Dura Mark's surety, the State Insurance Fund (Surety) sent Gomez to see Dr. David Simon for an independent medical exam. At this time she had finished the physical therapy prescribed by Dr. Poulter. After examining Gomez and reviewing her medical records, Dr. Simon found symptoms inconsistently related to a disk herniation and radiculopathy as well as exaggerated pain behaviors, and concluded that she could return to work without restrictions regarding the work-related injury. The Surety then had Dr. Paul Montalbano review Gomez's medical records and MRI, who concluded Gomez needed no further treatment for the work-related injury.

A week after her examination by Dr. Simon, Gomez returned to Dr. Poulter, complaining of persistent pain that prevented her return to work. Starting March 18, 2010, Gomez stopped receiving disability benefits. Dr. Poulter then wrote a letter to the Industrial Commission Rehabilitation Division in Idaho Falls stating that he did not agree with Dr. Simon's findings and that Gomez was not ready to return to work. After Gomez's request for an emergency hearing, the Industrial Commission assigned the matter to a referee and the hearing was held October 6, 2010.

The referee filed his findings on January 31, 2011, stating that he was perplexed by the "significant difference of opinion over the interpretation of [Gomez's] MRI study." The referee was persuaded more by the opinions of Dr. Simon, Dr. Montalbano, and the original radiologist that reviewed the MRI, stating the record did not reveal the bases for Dr. Huneycutt's and Dr. Poulter's reading of the MRI. In conclusion, the referee found that Gomez had failed to show that the treatment received was causally related to a condition triggered by the work-related injury. Therefore, the referee concluded that no analysis pursuant to *Sprague*[1] was needed to determine whether her treatment was reasonable and necessary.

After the Commission adopted the referee's findings, Gomez filed a motion for reconsideration asking that the record be reopened to allow for additional evidence on the issue of causation, arguing that no notice was given for the issue of causation and that causation had been established earlier in the case because neither party raised it as an issue. In its Order Denying Reconsideration, the Commission stated that Gomez was correct that they had not reached the question of reasonableness of treatment, but had based its decision on causation. The Commission based its ruling on *Henderson v. McCain Foods, Inc.,* 142 Idaho 559, 130 P.2d 1097 (2006), and claimed that Gomez was on notice of her requirement "to establish causation as a crucial element of her request for additional medical benefits." The Commission further found that causation had not been conceded by Dura Mark as the parties' experts were in disagreement about whether Gomez's symptoms were caused by her industrial accident. Gomez timely appealed.

## II. STANDARD OF REVIEW

The Idaho Constitution limits this Court's review of appeals from the Industrial Commission to questions of law. Idaho Const. Art. V, § 9; *Sprague v. Caldwell Transp., Inc.*, 116 Idaho 720, 721, 779 P.2d 395, 396 (1989). Idaho Code section 72-732 allows this Court to set aside an order of the Commission when, *inter alia*:

> (1) The commission's findings of fact are not based on any substantial competent evidence;
>
> . . .

---

[1] *Sprague v. Caldwell Transp., Inc.,* 116 Idaho 720, 722-23, 779 P.2d 395, 397-98 (1989) (finding of reasonable treatment under analysis that "a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice").

(4) The findings of fact do not as a matter of law support the order or award.

The Court will not disturb the Commission's findings of fact on appeal if they are supported by substantial competent evidence. *Hernandez v. Triple Ell Transport, Inc.*, 145 Idaho 37, 39, 175 P.3d 199, 201 (2007). Additionally, the "Commission's conclusions regarding the credibility and weight of evidence will not be disturbed unless they are clearly erroneous." *Moore v. Moore*, No. 37083, 2011 WL 310376 (Feb. 2, 2011).

## III.    ANALYSIS

### A.  Causation was necessarily put at issue before the Commission.

Gomez argues on appeal that it was error for the Commission to ignore the issues regarding reasonableness of treatment as agreed to by the parties and instead focus on the issue of causation for its decision. Gomez argues that the Commission is required to rule on only those issues agreed to by the parties for the hearing and included in the written notice of the hearing from the Commission. Also, Gomez argues that once medical benefits are initially allowed, the question of causation is automatically settled. Because causation is an issue whenever entitlement to benefits is at question, we disagree.

### 1. Idaho Code section 72-713 does not require specific notice for the issue of causation.

This Court has said that administrative tribunals are unable to raise issues without first serving an affected party with "fair notice" and a "full opportunity" to meet such issues. *Hernandez v. Phillips,* 141 Idaho 779, 781, 118 P.3d 111, 113 (2005) (citing *White v. Idaho Forest Indus.,* 98 Idaho 784, 786, 572 P.2d 887, 889 (1977)). Idaho Code § 72-713 is the legislature's codification of this rule, requiring the Commission to provide parties with a written notice of issues to be heard at a Commission hearing. *Id.* Idaho Code section 72-713 states that the "commission shall give at least ten (10) days' written notice of the time and place of hearing and of the issues to be heard . . . ." The issue of whether this notice required by I.C. § 72-713 needs to specifically state each individual issue in the text of the issues statement of the notice was answered in *Hernandez. Id.* at 781-82, 118 P.3d at 113-14. Further, the necessity of specifically listing the issue of causation in the issues statement was answered in *Henderson v. McCain Foods, Inc.,* 142 Idaho 559, 564-65, 130 P.3d 1097, 1102-03 (2006).

In *Hernandez,* the claimant was given proper notice of three issues regarding entitlement to medical benefits, temporary disability benefits, and attorney fees before the Commission. 141

4

Idaho at 781, 118 P.3d at 113. Yet, the claimant argued that the issues of impairment and maximum medical improvement (MMI), of which the Commission referee made findings, could not be at issue because they were not specifically listed in the notice's issues statement. *Id*. This Court disagreed, holding that the issue of MMI was "necessarily at issue by virtue of his claim for additional temporary income benefits" because whether the claimant was entitled to temporary income benefits turned on whether claimant had reached MMI. *Id*. If the claimant had reached MMI by a certain date, no additional temporary income benefits could be awarded, but if not, the claimant was entitled to the benefits. *Id*. Additional temporary income benefits could not be awarded without addressing the issue of MMI.

Similarly in *Henderson*, this Court found that since the claimant had made a claim for further medical benefits, the unspecified issue of causation was put at issue "by virtue of [the claimant's] claim." 142 Idaho at 564, 130 P.3d at 1102. Since "prior decisions ha[d] made it clear that an employee seeking compensation for medical care must prove that there is a causal relationship between the industrial accident and the need for the medical care," the Commission was not required to specifically notice the issue of causation. *Id*. It was necessarily at issue to address the issue of entitlement to medical benefits sought in the case. Medical treatments could be the most reasonable available option for a claimant's symptoms, but if there is no causal connection, there will ultimately be no entitlement to benefits. *Id*. at 565, 130 P.3d at 1103 ("Even though medical care is reasonable, it is still not compensable unless the care was due to the industrial accident."). In the present case, if there was no causal connection between Gomez's industrial injury and the treatment she received, the noticed issue of reasonableness is irrelevant.[2] Like in *Hernandez*, the issue specifically listed in the notice issues statement turned on another question that was not listed in the notice. In *Hernandez*, the issue before the Commission turned on MMI, here it turns on a causal connection between Gomez's industrial injury and the treatment she received. Therefore, we hold that I.C. § 72-713 does not require specific notice of causation. Causation is put on issue by virtue of any claim regarding the reasonableness of medical benefits arising from an industrial accident or disease; even if reasonableness is found—without causation, there is no entitlement to benefits.

---

[2] "[C]ompensation for personal injury . . . will be granted only if it be shown that an industrial accident has caused the affliction. [A claimant] ha[s] the burden of proving both elements, the accident and its causation of the injury." *Tipton v. Jansson,* 91 Idaho 904, 907, 435 P.2d 244, 247 (1967).

5

## 2. The fact that there was no specific notice for the issue of causation does not violate Gomez's constitutional rights.

Similarly to the claimant in *Henderson,* Gomez contends that "she was denied due process of law because she was not on notice that she would have to prove a causal connection between her industrial accident and her [medical treatment]." *See id.* at 563, 130 P.3d at 1101. This Court held that the claimant in *Henderson* was not denied due process by the failure to expressly state causation as one of the issues before the Commission. *Id.* at 564, 130 P.3d at 1102. Gomez argues that this holding in *Henderson* should not be applied to her case because causation was not addressed in a previous hearing before the Commission as it had been in *Henderson*. *See id.* at 563, 130 P.3d at 1101. Regardless of the factual differences, the holding in *Henderson* applies to Gomez's claim.

There is no dispute that the claimant in *Henderson* had two hearings before the Commission. The first of these hearings found that various symptoms were not caused by the claimed industrial accident. *Id.* Upon the claimant's motion, the Commission allowed an additional hearing to address whether costs for a subsequent neck surgery and post-operative care could be recovered. *Id.* The notice for the second hearing did not state that causation would be addressed. *Id.* Nevertheless, the claimant in *Henderson* was still required to prove the causal relationship between the necessary surgery for a claimant's symptoms and the industrial accident. *Id.* at 564, 130 P.3d at 1102. Just because a particular treatment is necessary for the claimant's medical condition, that does not automatically lead to a determination that the claimant is entitled to workers' compensation benefits. *See Fife v. Home Depot, Inc.,* __ Idaho __, 260 P.3d 1180, 1184 (2011). The conclusion that the claimant's due process rights were not denied by an unspecified notice of issues did not rely on the fact that causation was at issue at a previous hearing before the Commission and therefore somehow the claimant was already on notice because of the subject matter addressed in the first hearing. The conclusion was based on the fact that causation was a necessary step along with reasonableness of care to prove to the Commission the claimant was entitled to medical benefits. *See Henderson,* 142 Idaho at 564, 130 P.3d at 1102. The notice in *Henderson* did not come from knowledge gained by participating in previous proceedings; the notice came from an understanding of the proof necessary to show entitlement to medical benefits. Specific notice of causation is not necessary prior to an initial hearing before the Commission as Gomez contends. Rather specific notice of causation is unnecessary when the specifically noticed issue before the Commission is

reasonableness of treatment because causation is an element of the ultimate goal of entitlement to benefits. *Id.* at 565, 130 P.3d at 1103. Since Gomez was seeking to show she was entitled to medical benefits by showing reasonableness of the treatment received, this Court holds that she, like the claimant in *Henderson*, was on notice of the need to prove a causal connection between her industrial accident and the treatment she received.

### 3. Causation is not presumed by I.C. § 72-432.

Gomez sought an emergency hearing with the Commission to address the reasonableness of the treatment she received for back pain after her medical benefit payments were suspended. The Commission found that Gomez had not proven that the symptoms she had treated medically were caused by the occupational accident at question in this case. She now argues that since some benefit payments were made for her medical treatment, the question of causation could no longer be an issue. She believes I.C. § 72-432(1) infers the establishment of a presumptive causal connection once an employer or surety commences payment for a claimant's medical care and argues that the statute does not require causation be addressed before a physician is visited.

#### a. *No presumed causal connection.*

Idaho Code 72-432(1) states:

> Subject to the provisions of section 72-706, Idaho Code, the employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

The reasonableness of a required treatment is an analysis required by I.C. § 72-432(1). *Hipwell v. Challenger Pallet & Supply*, 124 Idaho 294, 298, 859 P.2d 330, 334 (1993). This analysis is unnecessary if the medical care is unconnected to an industrial accident. *Henderson,* 142 Idaho at 565, 130 P.3d 1097, 1103 ("Even though medical care is reasonable, it is still not compensable unless the care was due to the industrial accident."). The Commission cannot make a meaningful *Sprague* reasonableness analysis without some consideration of causation involved because causation is at the root of all workers' compensation questions. Requiring the Commission to ignore causation simply because the employer or surety has commenced with providing benefits prior to a *Sprague* inquiry would be unwarranted. An employer or surety is allowed to stop payment of benefits or refuse payments altogether if the treatment is found to be

7

unconnected to the industrial injury. *Fife,* __ Idaho at __, 260 P.3d at 1184 ("An employer is not liable for medical expenses unrelated to an industrial accident."); *Troutner v. Traffic Control Co.*, 97 Idaho 525, 528, 547 P.2d 1130, 1133 (1976) ("[T]he employer or surety [is given] the opportunity to investigate the claim in order to assure itself that it was obligated by I.C. § 72-432 to provide the treatment."). Section 72-432(1) protects employees, mandating that employers provide necessary medical services for employees injured on the job. *St. Alphonsus Reg'l Med. Ctr. v. Edmondson*, 130 Idaho 108, 111, 937 P.2d 420, 423 (1997); *Harrison v. Osco Drug, Inc.,* 116 Idaho 470, 473, 776 P.2d 1189, 1192 (1989). However, "Idaho Code § 72-432(1) does not eliminate the need to show causation." *Henderson,* 142 Idaho at 565, 130 P.3d at 1103. Further, if I.C. § 72-432(1) were interpreted to presume causation, this would essentially lead to the employer or surety insisting on evidence as to causation before providing benefits, thus being against the claimant's interests and vastly restricting timely access to needed care. Therefore, causation cannot be presumed in a *Sprague* analysis.

### b. *A physician is not required to establish causation before any treatment.*

An employee seeking medical benefits is required to show causation; this requirement is not the responsibility of a physician providing treatment. *Id*. "To recover medical benefits, the employee must prove both that the need for the medical care was due to the accident and that the medical care was reasonable." *Id.* Physicians merely treat the symptoms before them. The statute does not presume that this medical treatment by the physician will be covered, it only mandates that an employer or surety will provide or reimburse for reasonable treatment related to an industrial injury. *Fife,* __ Idaho at __, 260 P.3d at 1184 ("[A] determination that a particular treatment was required for a claimant's medical condition does not equate to a determination that the employer or surety is liable for the cost of that treatment."). If an employee wishes to be compensated for this treatment, the employee must show that the care was reasonable and that it was related to the industrial accident or disease. *Henderson,* 142 Idaho at 565, 130 P.3d at 1103. While Gomez is correct that I.C. § 72-432(1) does not include causation language, it is still a question that must be addressed along with the reasonableness of treatment before an entitlement to benefits can be reached. The Commission is not going to look to see if a physician has established causation before a treatment as Gomez contends, but will always analyze whether the treatment was reasonable under Idaho Code section 72-432(1) while mindful of the requirement

8

that causation be proven before an employee's entitlement to benefits is found. Causation is a subsequent determination to the treatment itself. *Troutner*, 97 Idaho at 528, 547 P.2d at 1133.

Idaho Code section 72-432(1) is not a tool that can be used by an employer or surety to deny benefits if a physician does not prove a causal connection, as Gomez contends, nor has it ever envisioned being so. Idaho Code section 72-432(1) merely ensures that an employer or surety is limited to compensating for only medical treatment related to an employee's industrial accident or disease. *See Fife,* __ Idaho at __, 260 P.3d at 1184. Should an employer or surety deny benefits, I.C. § 72-432(1) can still mandate later compensation if the treatment is necessary, reasonable, and related to the industrial accident or disease. *See, e.g., Reese v. V-1 Oil Co.,* 141 Idaho 630, 634, 115 P.3d 721, 725 (2005) (I.C. § 72-432(1) authorizing treatment at employer's expense after employer denial; where surgery was reasonably required and was needed as a consequence of the claimant's work-related injury); *Troutner*, 97 Idaho at 528, 547 P.2d at 1133 (surety can be liable despite initial refusal to authorize treatment). This Court finds that I.C. § 72-432(1) does not presume causation, nor does it allow an employer or surety to deny medical care on every single physician visit.

**B. The Commission did not err by denying Gomez's motion for reconsideration.**

Gomez argues that the Commission erred by denying her motion for reconsideration and that the Commission should have allowed her to present evidence regarding the issue of causation. We disagree and find that the Commission operated within its discretion when it denied Gomez's motion for reconsideration to present additional evidence.

The Commission can decide in its sole discretion that the interests of justice require any interested party the opportunity to present additional evidence for the record of the proceedings. *Uhl v. Ballard Med. Prod., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003); I.C. § 72-1368(7). The Commission's decision regarding whether it will consider additional evidence on a motion for reconsideration will not be overturned unless it be found that it has abused its discretion. *Slaven v. Rd. to Recovery*, 143 Idaho 483, 484, 148 P.3d 1229, 1230 (2006).

Gomez states that she felt ambushed by the referee's decision that she failed to prove a causal connection between her industrial accident and the treatment she was trying to show was reasonable for an entitlement to benefits. She filed a motion for reconsideration, asking the Commission to reopen the record and take additional evidence regarding causation. The Commission reasoned that there was a disagreement between the parties' experts regarding

9

Gomez's symptoms and the relation to her industrial accident throughout the case. Gomez presented exhibits at the original hearing that included medical records from Dr. Poulter, Dr. Huneycutt, and the Blackfoot Medical Clinic. Dura Mark also presented exhibits that included the medical records of Dr. Simon and the medical review by Dr. Montalbano. The Commission found that the causal relationship was first challenged by Dr. Simon in his examination, a position that was concurred in by Dr. Montalbano and the radiologist that first reviewed Gomez's MRI results. Dr. Simon's findings contradicted the conclusions of Gomez's treating physicians.

> Dr. Simon opined that [Gomez's] physical examination results and pain complaints were inconsistent with a disk herniation and radiculopathy, and that even if what Dr. Poulter claimed he identified on the MRI were true, it still would not provide an anatomical basis for Claimant's symptoms. Dr. Simon [sic] remarks clearly challenge Dr. Poulter's conclusions about the causal relationship between [Gomez's] symptoms and the objective findings, the cause of Claimant's symptoms (whether acute or chronic), the interpretation of [Gomez's] MRI records, and the existence of neuroforaminal stenosis.

The Commission relied on these findings to deny Gomez's request. The Commission possessed substantial and competent evidence to address the issue of causation with the medical records. Further, Gomez did not object to the records being admitted. Therefore, we find that the Commission did not abuse its discretion by denying Gomez's motion to reopen the record and present additional evidence.

## IV.    CONCLUSION

We find that the Commission was not required in this case to give Gomez specific notice of the issue of causation and that it was within the Commission's discretion to deny Gomez's motion to present additional evidence. Costs to Dura Mark.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**

10