944 P.2d 1365

**Dianna Lynn WILLIAMSON,
Claimant–Appellant,**

v.

**WHITMAN CORPORATION/PET, INC.,
Employer and Birmingham Fire Insurance Company of Pennsylvania, Surety,
Defendants–Respondents.**

No. 23328.

Supreme Court of Idaho,
Boise, May 1997 Term.

Aug. 7, 1997.

Rehearing Denied Oct. 22, 1997.

Emil F. Pike, Jr., Twin Falls, for claimant–appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants–respondents. Glenna M. Christensen argued.

TROUT, Chief Justice.

This is an appeal from a decision and order of the Industrial Commission (Commission) denying claimant Dianna Williamson (claimant or Williamson) medical and lost time worker's compensation benefits for an industrial injury allegedly sustained in July 1993. We affirm.

## I.

### BACKGROUND

Williamson worked in a milk condensing facility owned by Whitman Corp., d/b/a Pet, Inc., (Pet or employer) from 1982 until the plant closed in 1995. On March 5, 1990, Williamson slipped and fell at work and experienced lower back pain as a result. She underwent surgery around her L4 and L5 spinal disks, which was performed by Dr. Eric Widell in June of 1992. The injury left her with a 9% permanent impairment of the

whole body. On February 12, 1993, Dr. Widell declared claimant medically stable, and Williamson returned to work full-time.

On July 16, 1993, Williamson consulted Dr. Widell for muscle spasms in her back which began on or about July 1 while lifting trays of condensed milk at work. Dr. Widell sent a worker's compensation medical report to an agent of Pet's worker's compensation surety (surety), Crawford and Co. (Crawford), which Crawford stamped as received on July 27, 1993. The first page of the report lists March 1990 as the date of injury and describes Williamson's slip and fall accident. This portion of the report was presumably filled out by claimant, as the form's instructions indicated, "To be completed by the patient." In the attached narrative report of his examination of claimant, Dr. Widell stated that Williamson had suffered muscle spasms after performing some lifting at work and diagnosed her problem as a "transient strain." Williamson did not notify her employer of any accident occurring in July 1993, nor did she file a claim for worker's compensation benefits with the Commission. In January 1994, Williamson suffered another bout of back pain and consulted Dr. Widell. He treated Williamson throughout February and March of 1994. On July 7, 1994, Dr. Widell performed further back surgery on claimant. The surety paid medical and lost time worker's compensation benefits to Williamson throughout this period.

In a letter sent to Crawford on July 8, 1994, Dr. Widell opined that his treatment of claimant from July 1993 to July 1994 was not related to Williamson's March 1990 industrial injury but rather to an injury sustained on July 1, 1993. The surety then discontinued payment of benefits to Williamson because it had not received notice of the July 1993 accident within sixty days of its occurrence and because Williamson had not filed a claim for benefits within one year of the occurrence, as required by I.C. § 72–701. Pet and its surety assert that they paid benefits from July 1993 through July 1994 because they believed that Williamson's problems stemmed from the March 1990 industrial injury. Following the cessation of benefits,

Dr. Widell continued to treat claimant for these back problems through 1995.

## II.

### PROCEDURAL HISTORY

On February 1, 1995, Williamson filed a complaint with the Commission alleging the July 1, 1993, accident. She had also filed an Application for Hearing on August 29, 1990, alleging the March 5, 1990, accident. On February 28, 1995, claimant filed another complaint for further benefits for an alleged industrial injury sustained on September 20, 1993. These complaints were consolidated, and a hearing before Chairman Stephen J. Lord of the Commission was held on June 13, 1995. No evidence was presented at the hearing concerning the September 20, 1993, accident. Chairman Lord filed Findings of Fact, Conclusions of Law, and Proposed Order on June 17, 1996, which was subsequently adopted by the full Commission. The Commission found that: (1) claimant failed to give notice of the July 1993 accident within sixty days of its occurrence and failed to file a claim for benefits within one year as required by statute; and (2) no causal connection existed between claimant's July 1993 through 1995 medical care and her injury of March 1990. The Commission also concluded as a matter of law that: (1) Williamson is barred from receiving compensation for the July 1993 accident and injury; and (2) Pet and its surety are not liable for medical care rendered by Dr. Widell from July 1994 through 1995.

Williamson appeals this decision. On appeal, she argues that Dr. Widell's report, received by Crawford on July 27, 1993, was sufficient to put Pet on notice of her July 1993 accident and injury and that she is therefore entitled to worker's compensation benefits for that injury. Williamson also contends that the one-year period within which to file a claim for benefits was tolled by the surety's payment of lost time and medical benefits from July 1993 through July 1994. Alternatively, she asserts that, even if she is barred from receiving compensation for the July 1993 injury, Pet and its surety are liable for medical treatment she received

through 1995 because her back ailments stemmed from her March 1990 accident, for which Pet has acknowledged liability. Finally, she seeks costs and attorney's fees on appeal.

### III.

### STATUTORY LIMITATIONS PERIOD

Idaho Code § 72–701 establishes a limitations period for the recovery of worker's compensation benefits. It provides:

No proceedings under this law shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable but not later than sixty (60) days after the happening thereof, *and* unless a claim for compensation with respect thereto shall have been made within one (1) year after the date of the accident.... Such notice and such claim may be made by any person claiming to be entitled to compensation or by someone in his behalf. If payments of compensation have been made voluntarily or if an application requesting a hearing has been filed with the commission, the making of a claim within said period shall not be required.

(emphasis added). This statute, then, establishes two prerequisites to a claimant's recovery of worker's compensation benefits. First, the claimant must provide the employer with notice of the accident within sixty days of its occurrence. Second, the claimant must file a claim for compensation with the Commission within one year of the accident's occurrence, unless the employer or its surety has voluntarily paid compensation benefits for that accident to the claimant. In this case, the Commission found: "Claimant failed to give notice of her July 1993 accident within 60 days of its occurrence and failed to claim benefits for it within one year of its occurrence." Having found that claimant failed to meet the statutory deadlines for giving notice to her employer and for filing a claim for compensation, the Commission concluded, "Claimant is barred from compensation for her alleged July 1993 accident and injury." Although claimant appeals the Commission's findings regarding her failure both to give notice to her employer within

sixty days and to file a claim for compensation within one year, our resolution of the latter issue is dispositive of the case, and we therefore decline to address claimant's arguments relating to notice. *See Smith v. IML Freight, Inc.,* 101 Idaho 600, 602, 619 P.2d 118, 120 (1980).

### A. Standard of review

■ We will not disturb factual findings of the Commission if they are supported by substantial and competent evidence. *Dehlbom v. Industrial Special Indem. Fund,* 129 Idaho 579, 582, 930 P.2d 1021, 1024 (1997). We have defined substantial and competent evidence as evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 582, 930 P.2d at 1024. We exercise free review, however, over the Commission's conclusions of law. *Murray–Donahue v. National Car Rental Licensee Ass'n,* 127 Idaho 337, 339, 900 P.2d 1348, 1350 (1995) (citing Idaho Const. art. V, § 9; *Davaz v. Priest River Glass Co., Inc.,* 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994)).

### B. Claim requirement of I.C. § 72–701

■ Williamson admitted in her brief before this Court that she did not file a claim for benefits within one year of the occurrence of the accident, as required by I.C. § 72–701. The worker's compensation statutes contain no provision, such as § 72–704 which preserves claims despite untimely *notice* of the accident to the employer in certain circumstances, that excuses the late filing of a *claim.* *Petry v. Spaulding Drywall,* 117 Idaho 382, 384, 788 P.2d 197, 199 (1990). The Commission's finding that Williamson failed to file a claim for benefits within one year is thus supported by substantial and competent evidence. The Commission then concluded that claimant was barred from receiving compensation.

The Commission failed to address, however, Williamson's argument that the surety's payment of benefits to her from July 1993 through July 1994 tolled the one-year limitations period found in § 72–701. In support of her argument, Williamson points to the final sentence of § 72–701, which provides: "If payments of compensation have been

made voluntarily or if an application requesting a hearing has been filed with the commission, the making of a claim within said period shall not be required." With respect to this argument, the Commission found that the surety paid these benefits in the mistaken belief that Williamson's medical problems stemmed from her March 1990 slip and fall accident, for which Pet and its surety had already admitted liability, noting:

> [The surety] paid temporary disability income benefits due to Claimant's absence from July 1993 to July 1994. As revealed in their answers, Defendants paid benefits under Claimant's 1990 injury. As argued by Defendants, once they learned that the 1994 treatment was unrelated to the 1990 accident, they discontinued compensation to Claimant.

Substantial and competent evidence supports this finding. The worker's compensation medical report, received by Crawford on July 27, 1993, indicated that the date of injury was March 1990 and described the accident as a slip and fall. Furthermore, the attached examination report did not state that claimant experienced an accident at work in July 1993 which resulted in a transient strain. A reasonable interpretation of these documents is that, while lifting at work, claimant suffered an attack of back pain related to her March 1990 injury. In subsequent correspondence through July 1994, Dr. Widell did not mention any industrial injury or accident suffered by claimant in July 1993. It was not until July 1994 that Dr. Widell clearly indicated in a letter to Crawford that he viewed Williamson's problems from July 1993 onward as distinct from her March 1990 injury, attributing them to an industrial accident allegedly suffered on July 1, 1993:

> I saw [claimant] again on July 16, 1993 at which time she told me that she had a two week history of muscle spasms in the left side of the low back as the result of some

lifting at work. I would interpret that this is a separate and distinct injury from the 3/5 90[sic] injury and the symptoms for which I had been treating her since July 16, 1993 are related to the injury of about the end of June or the first of July 1993.[1]

Upon discovering that Dr. Widell viewed claimant's back problems as a separate injury, distinct from her March 1990 injury, the surety discontinued payment of benefits. This discontinuation strongly supports the conclusion that the surety made the payments from July 1993 through July 1994 in the belief that claimant's problems arose from the March 1990 incident. When it learned that this was not the case, the surety stopped payment of benefits. Substantial and competent evidence thus supports the Commission's finding that benefits were paid to Williamson in the belief that her medical problems were related to the March 1990 accident.

■ It then becomes a question of law whether the last sentence of § 72–701, which relieves a claimant of the requirement that she file a claim within one year, is triggered in this situation. Although the surety voluntarily paid benefits for injuries allegedly sustained in the July 1993 accident, it did so in the mistaken, but reasonable, belief that Williamson's medical problems stemmed from the March 1990 accident, for which the surety and Pet had already admitted liability. We hold that the final sentence of § 72–701 was intended to apply only in situations where the employer acknowledges liability for the injury at issue and voluntarily pays benefits for that injury. In such a situation, liability is uncontested, and it would be unreasonable to require the filing of a claim. This provision, however, was not intended to address the abrupt discontinuation of benefits such as that in this case, where the employer or surety ceases payment of benefits to contest liability.[2]

1. In Dr. Widell's letter, in every reference to July of 1993, the "1993" is crossed out by hand and "94" written above. The parties agree, however, that the letter refers to events in 1993.

2. Although claimant cites a number of cases to support her argument that the final sentence of § 72–701 applies here, all of these cases discuss the applicability of § 72–706 and its predecessor, statutes designed to address the problem of an employer or surety that abruptly discontinues payment of benefits after the one-year period for filing claims has expired. *See Ryen v. City of Coeur D'Alene,* 115 Idaho 791, 770 P.2d 800 (1989); *Facer v. E.R. Steed Equip. Co.,* 95 Idaho 608, 514 P.2d 841 (1973); *Harris v. Bechtel Corp.,* 74 Idaho 308, 261 P.2d 818 (1953).

Instead, in a situation where compensation abruptly ceases, I.C. § 72–706 is triggered. Section 72–706, entitled "Limitation on time on application for hearing," provides in relevant part: "When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury ... within which to make and file with the commission an application requesting a hearing for further compensation and award." I.C. § 72–706(2) (Supp.1996).[3] Williamson, however, did not raise below the issue of § 72–706's applicability.[4] Before the Commission, claimant's sole remarks regarding the claim requirement focused on the final sentence of § 72–701. Furthermore, nowhere in his remarks did Williamson's counsel bring § 72–706 to the Commission's attention. Claimant cannot raise an argument for the first time on appeal, and we therefore decline to address it.

We thus affirm the Industrial Commission's conclusion that, because claimant failed to file a claim within one year of the accident as required by § 72–701, she is barred from receiving compensation. We realize that this result is harsh in view of the evidence suggesting that Williamson herself believed that her back problems were related to the March 1990 accident and that she did not know otherwise until Dr. Widell indicated in his July 1994 letter to Pet that her injuries stemmed from a separate accident experienced in July 1993. Her situation is similar to that experienced by the claimant in *Smith v. IML Freight, Inc.,* 101 Idaho 600, 619 P.2d 118 (1980). In that case, the claimant Smith fell at work on May 30, 1975, and experienced pain in his arm and shoulder. In August 1975, a physician diagnosed his problem as osteoarthritis and treated him for that disease. In July 1976, Smith visited Dr. Johnson, an orthopedic surgeon. Although Dr. Johnson was aware of the industrial accident, he also diagnosed Smith's problem as arthritis, concluding that Smith's pain was not related to the accident. It was not until May 1977, nearly two years after the accident, that the claimant's condition was properly diagnosed as a herniated disc resulting from the industrial accident. At that time, Smith filed a claim for compensation which the Commission denied, finding that the employer had not received notice within sixty days and that no claim was filed within one year of the accident. The Commission thus concluded that Smith's claim was time-barred under I.C. § 72–701. On appeal, this Court addressed only the claim requirement. Smith argued that the Commission erred in denying his claim because, through no fault of his own, his doctors had misdiagnosed the injury. We rejected this argument, explaining that § 72–701 explicitly states that the one-year period of limitations is to be measured from the date of the *accident,* not from the date of injury. *Id.* at 602, 619 P.2d at 120. This Court also rejected Smith's contention that the term "accident" must be interpreted more broadly to permit the filing of a claim within one year of the discovery of the results of an accident. *Id.* at 602–03, 619 P.2d at 120–21. We reasoned that the terms of the statute are unambiguous and held that the limitations period begins to run from the date of the accident, not the date on which the resulting injury manifests itself. *Id.* at 603, 619 P.2d at 121. *See also Petry v. Spaulding Drywall,* 117 Idaho 382, 788 P.2d 197 (1990).

Likewise, in the case at bar, we are constrained by the express terms of § 72–701. Although we are sympathetic to Williamson's plight, § 72–701 and case law make clear that a claim must be filed within one year of the date of the industrial accident, regardless of the date the injury manifests itself or the date the extent of the injury becomes known. We thus affirm the Commission's denial of worker's compensation benefits to Williamson for medical treatment received in connection with her alleged July 1993 accident.

---

**3.** For this provision to apply, the claimant need not have filed a claim prior to the payment of the compensation. *See Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 682 P.2d 1263 (1984) (compensation paid in accordance with compensation agreement between surety and claimant).

**4.** In fact, claimant does not directly raise this issue on appeal either, as she does not cite or discuss § 72–706 anywhere in her briefing or argument before this Court.

## IV.

### MEDICAL CARE RENDERED AFTER JULY 1994

■ Williamson contends that, even if we affirm the Commission's ruling that she is barred from receiving compensation for the alleged July 1993 injury, Pet is still liable for medical care rendered by Dr. Widell from July 1994 through 1995. In making this assertion, she appears to argue that the medical care was related to problems stemming from the March 1990 accident, for which Pet acknowledged liability. The Commission rejected this argument, first noting that Dr. Widell testified that the treatment rendered from July 1993 onward was not related to the 1990 accident. The Commission then found that claimant's medical care between 1993 and 1995 was not causally connected to the 1990 accident. The Commission consequently concluded that Pet is not liable for Williamson's medical care from July 1994 through 1995.

We hold that substantial and competent evidence supports the Commission's finding that Dr. Widell's treatment of claimant between July 1994 and July 1995 was not related to Williamson's slip and fall accident of March 1990. Although Dr. Widell did not testify at the hearing and his post-hearing deposition was not made a part of the record on appeal, a review of his correspondence with both parties supports the Commission's finding. In the letter that prompted Pet to cease payment of benefits to Williamson, Dr. Widell stated: "I would interpret that this is a *separate and distinct injury from the 3/5 90 [sic] injury* and the symptoms for which I had been treating her since July 16, 1993 are related to the injury of about the end of June or the first of July 1993" (emphasis added). In correspondence with Pet's attorney dated December 1, 1994, Dr. Widell explained that he first saw Williamson for an injury sustained in 1990 and then asserted:

> She was seen again on July 16, 1993 having had a *separate injury* at work on or about July 1st with "muscle spasms" on the left side of the low back. She continued to be seen at intervals following that for pain in the left side of the low back.... [A congenital condition] became symptomatic as

a result of an industrial injury of about July 1, 1993. *I believe this represents a separate and distinct injury from the one for which we have previously treated her.*

(emphasis added). Finally, in a letter to Williamson's attorney dated May 26, 1995, Dr. Widell stated: "I regard the injury for which we did this recent surgery [performed on May 2, 1995] as *separate and distinct from the previous herniated disc of 1990 and related to events about the first of July of 1993*" (emphasis added). These letters all confirm that Williamson's treating physician, Dr. Widell, believed that claimant's back ailments beginning in July 1993 were not in any way related to her March 1990 industrial accident.

We thus affirm the Commission's finding that the medical treatment claimant received from July 1994 through 1995 was not related to her March 1990 injury. The Commission did not err in concluding that Pet and its surety are not liable for medical treatment rendered after July 1994.

## V.

### CONCLUSION

We affirm the order of the Industrial Commission denying worker's compensation benefits to Williamson, and we decline to award costs or attorney's fees to claimant as she is not the prevailing party on appeal. Costs on appeal to respondent.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.