130 P.3d 1097

**Teresa HENDERSON, Claimant–Appellant,**

v.

**McCAIN FOODS, INC., Employer, and RSKCO, Surety, Defendants–Respondents.**

**No. 31232.**

Supreme Court of Idaho, Boise, December 2005 Term.

Feb. 22, 2006.

Peterson, Parkinson & Arnold, Idaho Falls, for appellant. Bradley D. Parkinson argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Glenna M. Christensen argued.

EISMANN, Justice.

This is an appeal from an order of the Industrial Commission finding that the claim-

ant failed to prove that her neck surgery was caused by her industrial accident, determining that she had a 30% disability rating, and apportioning her disability under Idaho Code § 72–406(1) one-third to the industrial accident and two-thirds to her pre-existing condition. We affirm the Industrial Commission except as to its apportionment of the claimant's disability. We vacate that apportionment and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Teresa Henderson (Claimant) suffered an injury to her neck in an industrial accident while working for McCain Foods, Inc., (Employer) on August 25, 1999. On January 31, 2000, she filed a claim for compensation seeking medical benefits, temporary and permanent income benefits, and an award of attorney fees. The matter was heard on September 6, 2002, before a Referee. Two months later, the Claimant asked to reopen the record because she had recently been scheduled for neck surgery to be performed on November 20, 2002. By order entered on December 3, 2002, the Referee granted the motion in part, holding that the Claimant could have a second hearing, if necessary, on the issues of total temporary disability and medical benefits for the period beginning after the date of the first hearing. The Referee further held that the previously reserved issue of permanent disability could also be addressed at a second hearing.

On April 30, 2003, the Referee issued his proposed findings of fact and conclusions of law for the first hearing. By order entered on June 6, 2003, the Idaho Industrial Commission (Commission) adopted the Referee's proposed findings of fact and conclusions of law, and it entered a final decision that was conclusive as to all matters adjudicated in the first hearing. That order included a finding that the Claimant had suffered an industrial accident on August 25, 1999, which caused an injury to her neck and exacerbated a pre-existing, irregularly symptomatic condition. The Commission also ordered, among other things, that the Claimant was entitled to reasonable future medical care as deemed necessary by her treating physician.

The Referee held the second hearing on December 10, 2003. He subsequently issued proposed findings of fact and conclusions of law, which the Commission adopted by order entered on June 29, 2004. The Commission found that the Claimant had failed to prove that her neck surgery was causally related to her industrial accident. It held that she was not entitled to medical benefits for the surgery and post-operative recovery; that after the first hearing she did not suffer a temporary disability that was related to the industrial accident; and that she had a 30% permanent disability, of which 10% was related to the industrial accident. The Claimant filed a motion asking the Commission to reconsider its findings, which the Commission denied on August 31, 2004. The Claimant then appealed.

## II. ISSUES ON APPEAL

A. Did the Claimant have notice that she would have to prove at the second hearing that her neck surgery was causally connected to her industrial accident?

B. Did the Commission apply an incorrect legal standard when deciding that the Claimant had failed to prove that her neck surgery was causally connected to her industrial accident?

C. Is the Commission's finding that the claimant failed to prove a causal connection between her neck surgery and her industrial accident supported by substantial and competent evidence?

D. Was the Commission's award of 30% permanent partial disability supported by substantial and competent evidence?

E. Did the Commission err when apportioning the Claimant's disability pursuant to Idaho Code § 72–406(1)?

## III. ANALYSIS

**A. Did the Claimant Have Notice that She Would Have to Prove at the Second Hearing that Her Neck Surgery Was Causally Connected to Her Industrial Accident?**

The Commission found that the Claimant's neck surgery on November 20,

2002, was not causally related to her industrial accident three years earlier, and it therefore denied her compensation for the surgery and her post-surgical care. The Claimant contends that she was denied due process of law because she was not on notice that she would have to prove a causal connection between her industrial accident and her neck surgery. She argues that the issue of causation had been previously decided by the Commission's order entered after the first hearing and she was not given notice that it would be an issue at the second hearing.

Based upon the evidence presented at the first hearing, the Commission found, "Claimant suffered an industrial accident on August 25, 1999, which caused an injury to her neck that exacerbated a preexisting, irregularly symptomatic, condition." It ordered, "Claimant is entitled to medical care to the date of the hearing and for reasonable future medical care, including efforts to discontinue her use of narcotic pain medication, as deemed necessary by her treating physician." The Claimant contends that this finding and order established that her later neck surgery was caused by her industrial accident. We disagree.

On November 20, 2002, the Claimant had neck surgery consisting of a decompression and fusion at C5–6. The first hearing was held over two months earlier. At the first hearing, the Claimant had alleged that her industrial accident was causing various symptoms involving her neck, face, back, and left leg. The Commission did not find that those symptoms were caused by the industrial accident. It found, "Claimant's complaints beyond some transitory neck pain are not likely related to the accident." Prior to the first hearing, degenerative changes (spondylosis), abnormal bony outgrowths (osteophytes), and a disc bulge had been identified in the Claimant's neck at C5–6. The Commission did not find that those conditions were caused by the Claimant's industrial accident. It found that the Claimant's neck pain was a "longstanding" symptom prior to the accident, that the bony outgrowths pre-existed the accident, and that her slight disc bulge was of uncertain age. The Commission concluded, "Claimant suffered an industrial accident on August 25, 1999, which caused an injury to her neck that exacerbated a preexisting, irregularly symptomatic, condition." Because the Claimant had not yet had her neck surgery at the time of the first hearing, the Commission did not address whether the surgery was compensable.

The Claimant asked to re-open the record of the first hearing in order to present evidence regarding her scheduled surgery. The Referee denied that request, but did rule that "[q]uestions regarding . . . medical care . . . for the period beginning after September 6, 2002, may be raised again at a second hearing if necessary." The Claimant wanted a second hearing, and on July 2, 2003, the Referee sent the parties written notice that the second hearing would be held on December 10, 2003, and that the issues for determination would include "[p]ost-hearing medical care." Thus, the second hearing addressed whether the Claimant could recover benefits for the medical expenses she incurred after the first hearing, which would include her neck surgery and post-operative care.

██ "A worker's compensation claimant has the burden of proving, by a preponderance of the evidence, all the facts essential to recovery." *Evans v. Hara's, Inc.*, 123 Idaho 473, 479, 849 P.2d 934, 940 (1993). One of the facts essential to the recovery of medical expenses is that the expenses were incurred as a result of an industrial accident. An employee's "employer and surety are only liable for medical expenses incurred as a result of 'an injury' (*i.e.*, an employment related accident), or 'disability from an occupational disease.'" I.C. § 72–432(1). An employer cannot be held liable for medical expenses unrelated to any on-the-job accident or occupational disease." *Sweeney v. Great West Transp.*, 110 Idaho 67, 71, 714 P.2d 36, 40 (1986). The fact that an employee suffered a covered injury to a particular part of his or her body does not make the employer liable for all future medical care to that part of the employee's body, even if the medical care is reasonable.

For example, in *Matthews v. Department of Corrections*, 121 Idaho 680, 827 P.2d 693 (1992), the employee injured his back in a 1985 industrial accident, for which he re-

ceived medical and income benefits. Eighteen months later he sought additional compensation, including medical benefits for subsequent medical care to his back. We upheld the Commission's finding that he had failed to prove the subsequent medical care was incurred as a result of his covered back injury, stating, "We agree with the Commission that Matthews is not entitled to payment, pursuant to I.C. § 72–432(1), because 'no evidence indicate[s] that these bills were directly incurred as a result of his [1985] back injury.'" 121 Idaho at 682, 827 P.2d at 695 (brackets in original). In *Cole v. Stokely Van Camp*, 118 Idaho 173, 795 P.2d 872 (1990), the employee injured his back in 1982 and received some medical care at the employer's expense. Five years later he sought compensation, including medical benefits, contending that his continuing pain was caused by that industrial accident. One physician said it was, one said it was not, and a third said too much time had passed to be certain. We affirmed the Commission's finding that the employee had failed to prove that his current condition was causally related to his 1982 back injury. In *Rudolph v. Spudnik Equipment*, 139 Idaho 776, 86 P.3d 490 (2004), the employee injured his left shoulder on the job and received treatment from January through October 2000. About five months later in March 2001, an MRI revealed degenerative changes in the shoulder. The surety paid for some additional medical treatment for a couple months, and then refused to pay for further treatment, including recommended surgery. After hearing the matter, the Commission found that the employee had failed to prove that his current shoulder complaints and recommended surgery were related to the industrial accident. We affirmed, holding that there was ample evidence supporting the Commission's finding that the employee's existing condition and need for surgery were related to degenerative arthritic conditions rather than to the earlier industrial accident. In *Williamson v. Whitman Corporation/Pet, Inc.*, 130 Idaho 602, 944 P.2d 1365 (1997), the employee was injured in March 1990 when she slipped and fell at work. As a result, she underwent back surgery in June 1992. She returned to

work in February 1993, and in July 1993 experienced back spasms while lifting heavy objects at work. Although she sought medical care, she did not notify her employer of this incident. In January 1994, the employee again suffered back pain, which resulted in another back surgery. The surety paid medical and income benefits for the 1994 treatment until it received a report in which the treating physician opined that the treatment from July 1993 through July 1994 was related to the July 1993 accident and not to the March 1990 accident. The employee continued receiving medical treatment for her back through 1995. The Commission found that the employee could not recover benefits for the 1993 accident because she had not given her employer timely notice of the injury and had not filed a timely claim for benefits. It also held that there was no causal connection between the employee's March 1990 accident and her medical care from July 1993 through 1995. We affirmed both findings, and with respect to the latter finding we stated, "We hold that substantial and competent evidence supports the Commission's finding that Dr. Widell's treatment of claimant between July 1994 and July 1995 was not related to Williamson's slip and fall accident of March 1990." 130 Idaho at 608, 944 P.2d at 1371.

Our prior decisions have made it clear that an employee seeking compensation for medical care must prove that there is a causal relationship between the industrial accident and the need for the medical care. The Commission did not address at the first hearing whether the Claimant was entitled to medical benefits for her neck surgery because it had not occurred by the time of that hearing. One of the issues to be addressed in the second hearing was whether the Claimant was entitled to benefits for her medical expenses related to that surgery. In order to recover, she was required to prove a causal connection between her industrial accident and the need for the surgery. Because the Claimant put causation at issue by virtue of her claim for additional medical benefits, she was not denied due process by the Referee's failure to expressly state that causation was one of the facts Claimant must prove in order to recover those medical bene-

fits. *Hernandez v. Phillips*, 141 Idaho 779, 118 P.3d 111 (2005).

**B. Did the Commission Apply an Incorrect Legal Standard when Deciding that the Claimant Had Failed to Prove that Her Neck Surgery Was Causally Connected to Her Industrial Accident?**

■ The Claimant contends that the Commission used an incorrect legal standard when determining, after the second hearing, that her need for surgery was not caused by the industrial accident. Relying upon *Sprague v. Caldwell Transportation, Inc.*, 116 Idaho 720, 779 P.2d 395 (1989), and Idaho Code § 72–432(1), the Claimant contends that the correct legal standard is simply whether the medical care was reasonable.

Idaho Code § 72–432(1) provides, "[T]he employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury . . ., and for a reasonable time thereafter." In *Sprague v. Caldwell Transportation, Inc.*, we held that medical care is "reasonable" when: (1) the employee made gradual improvement from the treatment received; (2) the treatment was required by the employee's physician; and (3) the treatment was within the physician's standard of practice and the charges for the treatment were fair, reasonable, and similar to charges in the same profession.

■ Whether or not certain medical care is reasonable is a different issue from whether or not the need for such care was caused by the industrial accident. Even though medical care is reasonable, it is still not compensable unless the care was due to the industrial accident. To recover medical benefits, the employee must prove both that the need for the medical care was due to the accident and that the medical care was reasonable. Idaho Code § 72–432(1) does not eliminate the need to show causation. As we stated in *Sweeney v. Great West Transportation*, 110 Idaho 67, 71, 714 P.2d 36, 40 (1986), "[An employee's] employer and surety are only liable for medical expenses incurred as a result of 'an injury' (*i.e.*, an employment related accident), or 'disability from an occupational disease.' I.C. § 72–432(1). An employer cannot be held liable for medical expenses unrelated to any on-the-job accident or occupational disease."

The issue at the second hearing was whether the Claimant's need for her neck surgery was caused by her industrial accident. The reasonableness of such medical care was not at issue. The Commission did not err in requiring the Claimant to prove a causal connection between her industrial accident and the need for her neck surgery.

**C. Is the Commission's Finding that the Claimant Failed to Prove a Causal Connection Between Her Neck Surgery and Her Industrial Accident Supported by Substantial and Competent Evidence?**

■ The Commission found that the Claimant had failed to prove that her industrial accident caused the physical condition for which she had neck surgery. The Claimant contends that such finding is not supported by the evidence.

■ It is the role of the Industrial Commission, not this Court, to determine the weight and credibility of testimony and to resolve conflicting interpretations of testimony. *Lopez v. State, Industr. Special Indem. Fund*, 136 Idaho 174, 30 P.3d 952 (2001). On appeal, this Court will not conduct a *de novo* review of the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* This Court will not disturb the Commission's factual findings if they are supported by substantial and competent evidence. *Konvalinka v. Bonneville County*, 140 Idaho 477, 95 P.3d 628 (2004). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.*

The degenerative changes, abnormal bony outgrowths, and disc bulge in the Claimant's neck were addressed at the first hearing. After considering the medical opinions, the Commission found that "Claimant's com-

plaints beyond some transitory neck pain are not likely related to the accident." At the second hearing, the Claimant presented the opinion of the physician who performed her neck surgery. He stated that in his opinion, based upon information given him by the Claimant, the industrial accident caused her protruding disc at C5-6. The Commission did not find his opinion persuasive. Because his treatment of the Claimant began over three years after her industrial accident, it concluded his opinion was not more persuasive than the contrary opinions of physicians who treated and/or examined her at an earlier time. The Commission also discounted the testimony of the neck surgeon because he based his opinion regarding causation upon the history given him by the Claimant. Medical reports from other physicians indicated she denied any problems predating her industrial accident when in fact her medical records showed that she had scoliosis since childhood, was treated for back problems since 1988, and was treated for neck problems since 1990.

The Industrial Commission, as the factfinder, is free to determine the weight to be given to the testimony of a medical expert. *Lorca–Merono v. Yokes Wash. Foods, Inc.*, 137 Idaho 446, 50 P.3d 461 (2002). We will not disturb the Commission's conclusions as to the weight and credibility of expert testimony unless such conclusions are clearly erroneous. *Id.* The Commission's finding regarding the lack of causation between the Claimant's industrial accident and her neck surgery is supported by substantial and competent evidence.

## D. Was the Commission's Award of 30% Permanent Partial Disability Supported by Substantial and Competent Evidence?

The Commission found, considering the medical and nonmedical factors, that the Claimant had a permanent disability of 30%. The Claimant argues that if this Court reverses the Commission's finding that her need for neck surgery was not caused by the industrial accident, then we should vacate the Commission's finding regarding permanent partial disability. Since we have not re-versed the Commission regarding causation, we will not vacate the finding regarding permanent disability.

The Claimant also challenges the Commission's decision to reject the expert opinion of her rehabilitation counselor when assessing her permanent disability. That testimony was presented to the Commission in the expert's deposition, but the deposition is not part of the record on appeal. We will not presume error on appeal, but any error must be shown affirmatively by the appellant on the record. *Gaither v. EG & G Idaho, Inc.*, 106 Idaho 675, 682 P.2d 628 (1984). Therefore, we will not address the Claimant's assertion that the Commission improperly rejected the opinion of her rehabilitation counselor.

## E. Did the Commission Err when Apportioning the Claimant's Disability Pursuant to Idaho Code § 72–406(1)?

Pursuant to Idaho Code § 72–406(1), the Commission apportioned the Claimant's 30% disability by allocating 10% to her industrial accident and 20% to her pre-existing condition. The Claimant first contends that Idaho Code § 72–406(1) did not apply to her case because she did not have a pre-existing disability. She asserts her lack of a pre-existing disability is shown by the fact that her pre-existing condition did not impede her earning capacity.

Idaho Code § 72–406(1) provides, "In cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease." The statute does not require a pre-existing disability; it requires a pre-existing physical impairment. Such pre-existing impairment need not have been a hindrance or obstacle to obtaining employment in order for a disability to be apportioned under Idaho Code § 72–406(1). *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 40 P.3d 91 (2002).

A "permanent impairment" is "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation." I.C. § 72–422. It is undisputed that the Claimant had an anatomic or functional abnormality prior to her industrial accident which would constitute a permanent impairment. Thus, apportionment under Idaho Code § 72–406(1) was required if the degree of the Claimant's disability resulting from her industrial accident was increased because of her pre-existing impairment.

■ The Claimant also argues that the Commission's apportionment is not supported by substantial and competent evidence. She relies upon the following quotation from *Reiher v. American Fine Foods,* 126 Idaho 58, 62, 878 P.2d 757, 761 (1994) (citation omitted):

The Commission's apportionment under this statute must be explained with sufficient rationale to enable this Court to review whether the apportionment is supported by substantial and competent evidence. The application of the *Carey* formula to I.C. § 72–406 apportionments does not present substantial competent evidence to justify the apportionment that is made.

The *"Carey* formula" comes from this Court's opinion in *Carey v. Clearwater County Road Department,* 107 Idaho 109, 118, 686 P.2d 54, 63 (1984), in which we held, "[T]he appropriate solution to the problem of apportioning the non-medical disability factors, in an odd-lot case where the fund is involved, is to prorate the non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment." The *Carey* formula only applies when a pre-existing impairment combines with the current injury to create total and permanent disability. *Hamilton v. Ted Beamis Logging & Constr.,* 127 Idaho 221, 899 P.2d 434 (1995). Its purpose is to apportion the non-medical disability factors between the employer and the Industrial Special Indemnity Fund. We have previously held that the *Car-*

*ey* formula should not be used to apportion disability under Idaho Code § 72–406(1). *Reiher v. American Fine Foods,* 126 Idaho 58, 878 P.2d 757 (1994); *Edwards v. Harold L. Harris Construction,* 124 Idaho 59, 856 P.2d 96 (1993); *Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 846 P.2d 202 (1993). The question is whether the Commission in this case based its apportionment upon the *Carey* formula.

The Commission found, "Claimant's PPI [permanent partial impairment] is deemed to be 7% related to her injury and 14% related to preexisting conditions, for a total PPI of 21% and reflecting an apportionment of 2 to 1, nonindustrial to industrial." When determining how to apportion the Claimant's disability pursuant to Idaho Code § 72–406(1), the Commission stated as follows:

Considering all medical and non-medical factors, Claimant has some permanent disability. She does make a good first impression. Her age and education provide only minimal disadvantages in competing for jobs. The local job market has some impact. Other nonmedical factors do not significantly impact the analysis. Claimant is deemed to suffer a 30% permanent disability, including PPI, of which apportionment is required in the ratio expressed above. Therefore as a result of the industrial accident, Claimant suffered permanent disability of 10%, inclusive of the 7% PPI previously found attributable to the industrial accident.

The Commission determined that the Claimant's permanent impairment was caused one-third by her industrial accident and two-thirds by her pre-existing condition. It then held that apportionment of her disability under Idaho Code § 72–406(1) was *required* in that ratio. The Commission simply applied the *Carey* formula to apportion the Claimant's disability, and in doing so it erred. *Reiher v. American Fine Foods,* 126 Idaho 58, 878 P.2d 757 (1994); *Edwards v. Harold L. Harris Construction,* 124 Idaho 59, 856 P.2d 96 (1993); and *Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 846 P.2d 202 (1993). Although the Commission could conclude that the proper apportionment in this case is one-third to the Claimant's industrial acci-

**568**

dent and two-thirds to her pre-existing condition, it cannot do so simply by mechanically applying the *Carey* formula. It must provide analysis as to why, under the facts of this case, disability should be apportioned in the same ratio as impairment. We must therefore vacate the apportionment and remand this case for further proceedings consistent with this opinion.

### IV. CONCLUSION

We uphold the Commission's finding that the Claimant had failed to prove her need for neck surgery was due to her industrial accident and its determination that she had a 30% permanent disability rating. We vacate the Commission's apportionment of that disability under Idaho Code § 72–406(1) and remand this case for further proceedings consistent with this opinion. Since both parties prevailed in part on appeal, we do not award costs.

Chief Justice SCHROEDER, and Justices BURDICK and JONES concur.

Justice TROUT, Concurring in part and Dissenting in part.

I concur in all of the Court's opinion with the exception of the conclusion that the Commission erred in apportioning disability. The Court concludes that the Industrial Commission applied the *Carey* formula in apportioning disability, however, there is no indication whatsoever that the Commission applied *Carey*, nor that it felt "required" to do so. The Industrial Commission is very familiar with the *Carey* formula and its application and always specifically refers to the case by name when applying it. Again, there is no reference to that case in the Commission's decision. The Commission stated in its reasoning that there was not much in the way of non-medical factors contributing to disability. Basically, the Commission concluded that Henderson was no more disabled after the industrial accident than she had been prior and thus, the Commission attributed the majority of any disability to her pre-existing conditions. The Commission said "Claimant is deemed to suffer a 30% permanent disability, including PPI, of which apportionment is required in the ratio expressed above."

Rather than using the word "required," the Commission could have said "mandated by the facts" and not have changed the meaning; it simply meant the facts recited previously compelled an apportionment of disability no different than the impairment. The Court focuses on one word to conclude the Commission improperly applied the *Carey* formula without any indication or mention of that case. I respectfully disagree that a remand is necessary in this case, and would affirm the Commission's decision.