EISMANN, Justice.
This is an appeal from the Industrial Commission in a worker’s compensation proceeding in which the Commission held that the claimant had failed to prove that symptoms occurring after his industrial accident were caused by the accident, where following his industrial accident he had been twice injured in non-industrial accidents and refused to provide the medical records regarding those injuries. We affirm the order of the Commission.
I.
Factual Background.
On June 15, 2006, William Waters (Claimant) was working as a drywall hanger and taper. While assisting his supervisor to hang drywall overhead, the supervisor instructed Claimant to push the drywall up with his head. When Claimant did so, he felt pain in his neck and right shoulder. On July 29, 2006, claimant sought medical care from a chiropractor. When his shoulder pain and weakness did not resolve, Claimant went to Gregory West, M.D., an orthopedic traumatologist, on September 26, 2006. After further testing and the failure of conservative therapies to relieve the symptoms, Claimant underwent an anterior cervical discectomy and fusion surgery at C5-6 on January 31, 2007. It is undisputed that the surgery was necessitated because of the injury Claimant received in the industrial accident.
On April 11, 2007, the orthopedic surgeon who performed the surgery examined Claimant. He noted that Claimant had minimal pain, no numbness or tingling, and no problems except some difficulty swallowing when he hyper-extended his neck in the shower and some discomfort when swallowing. The surgeon’s notes recorded:
The patient really has minimal pain. Normal neurologic function in the upper extremities. He has no numbness or tingling. The only dysphagia is when he is in the shower, when he stretches his neck and hyper-extends and notes when he swallows he has a little discomfort. Apart *261 from that, the patient has no problems. The patient has no dysphonia.
The surgeon released Claimant to return to light work with a 45-pound lifting restriction. On May 23, 2007, the surgeon again saw Claimant. The surgeon concluded that Claimant had reached medical stability, and he released Claimant to full activities, restricting him only from impact loading with axial activities, such as diving and gymnastics.
Claimant returned to drywall work, but was laid off due to his difficulty keeping up. He applied for jobs at a convenience store and at rental car agencies, but was not hired.
In July 2007, Claimant sustained a whiplash injury to his neck in a rear-end motor vehicle accident, for which he sought and received emergency medical care. During the first part of 2008, he tripped and fell while running, sustaining an injury to his right shoulder for which he also sought and received emergency medical care.
On August 28, 2008, Claimant returned to Dr. West for treatment of right shoulder pain. After examining Claimant and conducting further testing, Dr. West determined that he had shoulder weakness from a nerve injury likely due to Claimant’s industrial accident.
Whether and to what extent Claimant was entitled to permanent partial disability benefits was tried to a referee. Claimant relied upon the testimony of two experts: Dr. West and a vocational rehabilitation consultant. Neither of them was provided with the medical records regarding the injuries Claimant sustained after his industrial accident, although Dr. West opined that a whiplash injury would affect Claimant’s musculature, not his nerves. The central issue was whether the medical conditions identified by Dr. West after August 28, 2008, were caused by the industrial accident. The referee concluded that Claimant had failed to prove that they were. The referee recommended that Claimant had failed to prove any permanent partial disability in excess of a 12% permanent partial impairment, which the State Insurance Fund (Surety) had already paid.
The Commission reviewed the record and the referee’s recommendation and adopted the referee’s proposed findings of fact and conclusions of law as its own. The only causation testimony from a medical expert came from Dr. West. The Commission found that Dr. West’s opinion testimony was not entitled to any weight because it was based upon Claimant’s version of his symptoms and their onset and Claimant’s account was not credible. The Commission reasoned as follows:
42. The only evidence of deterioration in Claimant’s condition, different from that observed by [the orthopedic surgeon], for fifteen months following May 2008, consists of Claimant’s testimony. As determined, above, Claimant’s testimony is not credible with respect to the time of onset of his symptoms. Furthermore, there is inadequate evidence to corroborate Claimant’s testimony that he experienced significant pain with drywall work before July 2007 which, if proven, may have constituted grounds for finding [the orthopedic surgeon’s] MMI [maximum medical improvement] finding premature.
43. Similarly, after May 2007 but before he consulted Dr. West in August 2008, Claimant sustained a whiplash-type injury to his neck, and, possibly, a trip and fall injury to his right shoulder. It is undisputed that Claimant sustained these injuries to the very locations he claims were only permanently injured as a result of his industrial accident. Claimant has failed to prove that the complaints with which he presented after August 28,2008 are referable to the subject accident as opposed to one or more of the intervening events. Therefore, the symptoms reported to Dr. West cannot be assumed to have existed, either as of the date [the orthopedic surgeon] found Claimant reached MMI, or because of the industrial injury. As a result, Dr. West’s opinions with respect to Claimant’s industrially-related limitations and restrictions lack foundation, are given no weight, and are unpersuasive for the purpose of challenging [the orthopedic surgeon’s] MMI assessment. *262 sustained any permanent partial disability in excess of his 12% whole person permanent partial impairment, which Surety has paid.” Claimant then timely appealed.
*261 The Commission issued its order that “Claimant has failed to prove that he has
*262 II.
Did the Commission Err in Failing to Find Credible the Testimony of Dr. West?
On an appeal from the Commission, the Constitution of the State of Idaho limits this Court “to a review of questions of law.” Idaho Const. Art. V, § 9. “That provision is a limitation on our jurisdiction.” Fife v. The Home Depot, Inc., 151 Idaho 509, 513, 260 P.3d 1180, 1184 (2011).
“A worker’s compensation claimant has the burden of proving, by a preponderance of the evidence, all the facts essential to recovery.” Evans v. Hara’s, Inc., 123 Idaho 473, 479, 849 P.2d 934, 940 (1993). “One of the facts essential to the recovery of medical expenses is that the expenses were incurred as a result of an industrial accident.” Henderson v. McCain Foods, Inc., 142 Idaho 559, 563, 130 P.3d 1097, 1101 (2006). An employee’s “employer and surety are only liable for medical expenses incurred as a result of ‘an injury’ (i.e., an employment related accident), or ‘disability from an occupational disease.’ I.C. § 72-432(1).” Sweeney v. Great West Transp., 110 Idaho 67, 71, 714 P.2d 36, 40 (1986). “The fact that an employee suffered a covered injury to a particular part of his or her body does not make the employer liable for all future medical care to that part of the employee’s body, even if the medical care is reasonable.” Henderson, 142 Idaho at 563, 130 P.3d at 1101. A claimant, who has previously received benefits and is seeking benefits for additional medical care allegedly caused by the industrial accident, still has the burden of proving that the need for the additional medical care was caused by the accident. Gomez v. Dura Mark, Inc., 152 Idaho 597, 601, 272 P.3d 569, 573 (2012).
“The Industrial Commission, as the factfinder, is free to determine the weight to be given to the testimony of a medical expert.” Eacret v. Clearwater Forest Indus., 136 Idaho 733, 737, 40 P.3d 91, 95 (2002). “The opinions of an expert are not binding upon the trier of fact, but are advisory only.” Clark v. Truss, 142 Idaho 404, 408, 128 P.3d 941, 945 (2006). “It is the role of the Industrial Commission, not this Court, to determine the weight and credibility of testimony and to resolve conflicting interpretations of testimony.” Henderson, 142 Idaho at 565, 130 P.3d at 1103. “On appeal, this Court will not conduct a de novo review of the evidence or consider whether it would have reached a different conclusion from the evidence presented.” Lopez v. State, 136 Idaho 174, 178, 30 P.3d 952, 956 (2001).
In this case, Claimant promised to provide Surety with the medical records regarding his two accidents that occurred after the industrial accident, but then refused to do so. The Commission failed to give any weight to Dr. West’s opinion as to causation because Claimant had also failed to provide Dr. West with those records. The Commission found that Claimant was not credible as to when the second accident occurred. Claimant contends that the Commission erred in rejecting the unrebutted testimony of Dr. West as to causation.
A party presenting expert testimony has the burden of establishing the credibility of the expert. The credibility of an expert is not simply whether the expert is expressing an honest opinion. The Commission can take into consideration “whether or not the opinion takes into consideration all relevant facts.” Eacret, 136 Idaho at 737, 40 P.3d at 95. In this case, Claimant chose not to provide his expert with medical records of his two accidents that occurred after his industrial accident and that injured the same parts of his body injured by his industrial accident. The Commission could certainly take the refusal to provide such records into consideration when determining the weight to be accorded the opinion testimony of Claimant’s expert.
The Commission’s holding is consistent with our recent opinion in Mazzone v. Texas Roadhouse, Inc., 154 Idaho 750, 302 P.3d 718 (2013). In Mazzone, the claimant suffered a severe burn when he tripped at work, plunging his right forearm into a deep fat fryer. Id. at 753, 302 P.3d at 721. *263 He sought benefits under the worker’s compensation law for post traumatic stress disorder (PTSD) on the ground that his industrial accident was the predominant cause of the PTSD. The claimant “had a long history of psychiatric disorders prior to the industrial accident,” which included severe psychological symptoms after a breakup with his girlfriend, reported symptoms of bipolar disorder and PTSD, insomnia, and stress regarding his son’s medical problems. Id. at 757, 302 P.3d at 725.
Two psychiatrists testified that the claimant’s industrial accident was the predominant cause of his PTSD, and the surety presented the testimony of a psychologist to the contrary. The Commission found the surety’s expert more credible than the claimant’s two experts because those experts “did not review his earlier medical history.” Id. at 755, 302 P.3d at 723.
With respect to one of the claimant’s experts, the Commission found the expert’s opinion that the bum injury was more significant than any other factor in the development of PTSD lacked credibility, “because it does not accurately account for Claimant’s prior psychological history.” The Commission excluded the other expert’s opinion from evidence as lacking in foundation because the expert admitted that “she would need to see Claimant’s prior mental health care records to determine the effect his preexisting mental health condition has on his post-bum injury mental condition,” but she did not review them. In upholding the Commission, we stated, “The referee was entitled to consider the methodologies of all the experts, their examination of [claimant], their concerns with [claimant], and their consideration of his prior psychiatric history in determining which medical opinion was most credible.” Id. at 756-57, 302 P.3d at 724-25.
Thus, in Mazzone we held that the Commission could decide not to give credibility to an expert medical opinion where the expert had failed to review all of the relevant medical records. Claimant argues that Surety had the burden of providing that there was a causal relationship between either of the two subsequent accidents and his current impairment and resulting restrictions. That argument is incorrect. Claimant had the burden of proving, by a preponderance of the evidence, all the facts essential to recovery. Evans, 123 Idaho at 479, 849 P.2d at 940. He chose not to provide his expert with the medical records regarding his injuries resulting from the two accidents that occurred after the industrial accident. The records would certainly appear relevant because those injuries were to the same parts of Claimant’s body that were injured in the industrial accident. By doing so, he ran the risk that the Commission would not give any weight to the causation testimony of his expert.
“The spoliation doctrine is a general principle of civil litigation which provides that upon a showing of intentional destruction of evidence by an opposing party, an inference arises that the missing evidence was adverse to the party’s position.” Stuart v. State, 127 Idaho 806, 816, 907 P.2d 783, 793 (1995). “[W]e recognized the spoliation doctrine as a form of admission by conduct [in that] ... the party is said to provide a basis for believing that he or she thinks the ease is weak and not to be won by fair means.” Courtney v. Big O Tires, Inc., 139 Idaho 821, 824, 87 P.3d 930, 933 (2003). If a jury can reasonably infer that evidence deliberately or negligently destroyed by a party was unfavorable to the party’s position, the Commission could reasonably infer that medical records intentionally withheld by Claimant in this ease were unfavorable to his position.
III.
Conclusion.
We affirm the order of the Industrial Commission, and we award respondent costs on appeal.
Chief Justice BURDICK, Justices W. JONES, and HORTON concur.